Livingston, J.
Show how the interest here does not incapacitate.
*465 Against us some maxims and some decisions have been relied on, which, however, it is conceived, do not in the least invalidate the force of our arguments. It is said that the order in favor of White created a lien on the property in' the hands of the agent. Allowing this to be so, that lien was but a possibility. There might have been five hundred previous orders, each to be preferred to this; or the agent himself might have had claims more than enough to absorb the whole of the funds when in his possession. That equitable liens should work legal incompetence is per fectly new in law. If it be so ruled, the court may, per *466 haps, see the doctrine of incompetence pervade cases as yet but little supposed to be within its influence.
The case of a mortgagee being inadmissible m an ejectment to testify for his mortgagor, is widely different from this. There the mortgagee has a direct legal interest, by the operation of a legal instrument. His mortgage gives him an interest at law.
I am aware that, after receipt of the sums in demand, there may, perhaps, be a remedy at common law for recovey of the amount of the order; that an action for money had and received may be maintained. But let it be remembered, •this species of proceeding is, in its nature, like a bill in chancery. It admits of every equitable plea as a defence; set-offs, prior liens, and the whole train of occurrences which would give the defendant a title to prefer others to the plaintiff. The cases from Vezey, senior, and Vesey, junior, are nothing more than chancery decisions respecting funds in possession, and Powel v. Gordon, (2 Esp. 735,) is an authority directly in our favor. There the witness had a power of attorney to receive the money when recovered, so that the fund out of which his debt was to be paid, would have come into his own hands ; but your honors will [*371] please to observe that Lord Kenyon asked *him if he was willing to permit any other person to- _ receive the money, and it was not till he refused this that he was deemed incompetent. The reasoning, then, of this decision is, that had the money gone into the hands of another, the witness would have been admissible, though it is certain his letter of attorney would have warranted him in demanding it from the receiver. The possibility of intervening claims did away the objection. So with us, as the money was not to go into White’s hands, but into those . of another, he stands precisely in the situation of the witness in Powel v. Gordon, had he consented to another’s receiving the sum in litigation.
It has, therefore, it is presumed, been shown,
*467 1st. That objections run more to the credit tnan to the competence of witnesses.
2d. That to affect the competence, the interest must be immediate.
3d. That White’s interest was not immediate, but consequential. ■
4th. That admitting a lien to have been created by the order, that does not vary the matter.
5th. That the very case of a creditor witness was put by the whole court of Icing’s bench,' and allowed not to incapacitate; and
6th. That the inferences, unavoidably resulting from Powel v. Gordon, fully establish the competence of White.
The reasoning antecedently used on this point, cannot, it is thought, be better concluded than in the words of Mr. Fonblanque, 2 Fonb. 457, when speaking of the rule respecting the interest of witnesses in causes, on the trials of which they are brought to give evidence; it is, he says, “the most flexible in its application of any.”
The next objection to which it is necessary to advert, is, •‘that paroi testimony of ownership was inadmissible.” For this it has been relied on, that the register act has made a certificate of registry a legal record. It surely will never be imposed on me to demonstrate that such an instrument, or the book in which it is kept, is not a legal record, in the technical sense of the word, import- .[372] ing a verity which admits not of being controverted or substantiated by oral proof. I shall only observe, it has been ruled by Lord Kenyon, that exercising acts of ownership, paying of men,^directing the loading, &c. were sufficient testimony of interest in a vessel. For, in commercial contracts, the highest degree of evidence is not always required. The purpose of the register act was not to make the proceedings under it of record, but merely for state reasons, to enable to collect the duties on tonnage, by ascertaining what ships belong to foreigners, and what are our own.
*468 It is, thirdly, insisted by the defendants, that as the aban' donment was made in writing, and notice to produce it not given, paroi proof of the abandonment ought not to have been received.
It is worthy of observation that the abandonment is not denied; it is only asked that we should not be permitted to show it. It cannot be argued that it is indispensable to make the abandonment in writing. We admit it to be usually so done: that however, is nothing more than matter of caution. It was, on that account, done here. But there is no case to show we were obliged to do it. If so, we may prove the contents or effect of the letter of abandonment, without notice to produce it, because it now becomes a fact, like every other, to be established by paroi testimony.
In order to decide on the necessity of giving a notice to produce any written paper served on the opposite party, we have only to call to mind the reasons why it is in any case required. They are, lest a misrepresentation should be made of any fact which constitutes the foundation of the wtion, and which, though in possession of the opposite side, yet being unnecessary to his case, might not be brought by him. When, therefore, the contents of the paper in question are not the foundation of the action, a notice to produce it is totally superfluous. Therefore, in cases of notices to quit; notices to a magistrate previously to [*373] commencing an action *against him; the demand in writing of a warrant before proceeding against an officer, or any similar case, notice to produce the notice, need not be given. Jory v. Orchard, 2 Bos. & Pull. 39. So an attorney’s bill, on which an action has been brought,, may be proved without notice to produce the one delivered under the statute. Anderson v. May, 2 Bos. & Pull. 237. So, payment of rent by a tenant in possession can be established, without notice to produce the receipt. Bunn. Eject. 289.(a) Because, wherever the matter is collateral, *469 paroi evidence is adequate to every purpose. The idea of this necessity of giving notice, has arisen from a confounding of cases. From mistaking that to be the foundation of the suit, which is only used in proof of the demand. It is but a mere formality, which the right of action by no means depends.
Another reason may also be offered to evince the nugatoriness of a notice to produce the letter of abandonment. It was sufficient to establish it by the copy offered at the trial. Wherever a number of copies are simultaneously made, they are, in law, all originals. Because, being created uno flatu, one is considered the same as the other, and may equally be read in evidence without notice.(a) Gotlieb v. Danvers, 1 Esp. Rep 455. So the counterpart of indentures. Burleigh v. Stibbs, 5 D. & E. 465.(b)
Having, it is hoped, obviated the three first difficulties to our retaining our verdicts, the fourth which presents itself, is, “ that there is no proof of the property being the property of a citizen of the United States;” or, in other words, that the warranty of American citizenship has not been complied with.
In combating this objection, we beg leave to state, that in this country there are three different kinds of citizens.
1st. Those who became so at the declaration of independence.
2d. Those who, since that period, have become so by naturalization.
3d. Those who are so by domicil and employment.
' Thus m.uch being premised, it will be necessary to call the attention of the court to those doctrines, on which *the law of warranties has been held to rest. [*374] According to those, it suffices if the warranty be *470 complied with in conformity to its ■letter, without any regard being had to its spirit. In consequence of this principle, an opposite maxim has been sanctioned, that no virtual fulfiling of a warranty can be allowed. What, then, in the present case, can be deemed to fulfil the warranty of American citizenship ? Will it be pretended that the person warranting must be a citizen, such as those who became so at the declaration of independence? This will hardly'be said; and should it be, there is no case to warrant the assertion. Is there any- decision which declares he must be a citizen by naturalization ? None; for this would exclude all original citizens. Neither can it be insisted that he must be a citizen with all the rights and privileges of an American ; because a naturalized American, one who did not become a citizen by the declaration, is not eligible to the office of President of the United States, or that of Governor to any individual state. Both positions are equally untenable. Of what species of citizens, then must he be ? One by domicil(a) and employ. Why ? Because this embraces every class of citizens, and answers every purpose of the warranty. Let us, for an instant, recur to the reasons on which a warranty is given. It is to assure the underwriter that the subject matter of the policy is American, and within the protection of the law of nations. It has been long ago settled that personalities follow the person. On this account domicil for ever regulates distribution of effects. That the principle is peculiarly adhered to in matters of prize is notorious. The merchandise of a friend, resident in the country of an enemy, is liable to' confiscation ; for it is the domicil that stamps the national character. So the employ of a master of a ship invariable fixes the nation to which he belongs. The Énibden, 1 Rob. Adm. Rep. 16. The Vigilantia, and cases there cited, ibid. 1 The *471 Harmony, 2 Bob. Adm. 322. Mr. Ostermeyer’s Case ibid¿ 41. Mr. Johnson’s, ibid. 17. Owners of the shop Chester v Owners of the experiment, 2 Dall. 41. The case states Peyton a resident, and known master of American ^vessels, naturalized from residence(ct) and employ. [*375] In this view he is beheld by the admiralty court in Nassau, and the property they acknowledged as his they acquit as neutral. Every protection, then, has been afforded which the warranty was meant to confer, and Peyton, in the eyes of a foreign tribunal, and according to the law of nations, stands confessed an American citizen. In every part of insurance law the same principle is to be found. If within the letter of the clause, it is enough'. A ship waá warranted well on such a day ; she was well at 6, but lost at 8 o’clock, and held a compliance. (Blaclchurst v. Cochell, 3D. & E. 360.) So here, warranted the property of an American citizen. Not a citizen with all the rights and privileges of an American citizen; not even a naturalized citizen; but a citizen' adequate to all the perposes of protection, intended by the warranty, a citizen de facto, though not de jure. I am aware the ground now taken is, in cases like the present, perfectly new. It is not, however, a ground on which this court has never trodden. We but follow their footsteps in other causes.- In Goold and another v. Grade, June term, 1798, under a clause in a policy, that if an assurance was' effected in Europe, the premium was to be returned, deducting one half per cent, it was held, unanimously, that a policy de facto was within the meaning of the words, and the insurer exonerated, though the policy was void ah initia, and therefore, a recovery could never be had. So, by Puller, J. in Wilkinson v. Payne, 4 D. & *472 E. 468, a marriage de facto was said to be sufficient to entitle to recover on a promissory note.
■ If, however, the court shall be against us on this principle, still we shall contend that the citizenship of Peyton is substantiated by evidence in the cause.
It is an acknowledged axiom that every man’s testimony is to be received or rejected in toto. You cannot cut and garble it. Take one line, if it suits your purpose, and then reject the next; his alienage is before the court, from his own confession, and so is his naturalization. If you believe him on his word that he was an alien born, you must believe him on his word that he has been naturali[*376] zed since. As a *man is charged, so he shall be discharged(a) If his own declaration is to determine him an alien, his own declaration shall show him an alien naturalized. His acknowledgment of his foreign birth is nothing more than presumptive evidence of his being now an alien. He might have been one by birth, and yet have become a citizen at the declaration of independence. General Gates, Governor Clinton, Washington, himself, were all aliens by birth; being, therefore, born an alien, is no more than presumption of his being so now, and presumption may always be rebutted by presumption. Tysen v. Clark, 3 Wils. 541. Runn. Eject. 262. Allowing then, for argument’s sake, the declaration of having been naturalized to be laid aside, what presumption does the case afford to counteract this presumptive evidence of alienage. First, there is a general reputation oí the plaintiff’s being a citizen. It will not be denied that in many instances, reputation is, of itself, good testimony. It is adequate to establishing a pedigree or a marriage. Per Holt, Ch. J. in Dr. Hartcourt's Case. Yet in each of those, certificates may *473 be adduced, and the doctrine of Holt is now allowed in England, though registers in both those cases are ordained by statute law, and certificates of each may be, and are every day, adduced. So to ascertain who.was the patron of a living, in The Bishop of Meath Lord Belfiéld, 1 Wils. 215, presumption was allowed. If ever there was a country in which presumption of citizenship ought to be conclusive, it is this. I may again instance General Washington, nay, your honors who now sit on the bench have nothing else to offer; you have no naturalization, no document to show, but the places you fill, and general reputation would give to you the character, and to your children a title, to the estates you may leave. So with Peyton, were he to die to-morrów, his issue would take his real estate, in right of his citizen father. Shall then, his reputation of citizenship be good to support a claim to land, and yet be inadequate to one against an underwriter? Are three fourths of the community to be cut off from the only mode by which they ever had, or can have, a possibility of substantiating their right to the American *name? If [*377] more proof be required of the,plaintiff’s citizenship, it is afforded, and that by the case itself.
Before it is attempted to evince this, I shall beg leave to lay down three maxims.
1st. That all things done are presumed to be rightly done. Griffin v. Stanhope, Cro. Jac. 354; Rex v. Morris, 2 Burr. 1189 ; 1 Wils. 275,
2d. That situations occupied shall be supposed to be legally filled. Lord Halifax's Case, Bull. N. P. 298 ; Lord Purbeck's Case, cited, Cowp. 109.
3d. That fraud and misconduct shall be imputed to no man. Chattle v. Pound, Gilb. L. Ev. 103. If necessary, I shall first substantiate, and then apply these principles.
Lewis, Ch. J.
The principles will not, I fancy, be dia puted.

Cainés.

In order to apply them, it will be incumbent to advert to the testimony in the case.
It is in evidence that the plaintiff commanded an Ameri cari vessel carrying guns. In order to capacitate him fox this command, he must have been antecedently proved, to the satisfaction of the officers in the custom house, an American citizen; for none but an American citizen could occupy such a station. If so, then we are fully within two of the maxims; we have complied with their letter and their spirit; it is, therefore, to be presumed that what has been done was rightly done, and that the situation which Peyton did fill was legally occupied. The inference, consequently, becomes clear as day that the plaintiff is an American citizen. If we hesitate for a moment in pronouncing him so¿ w'e violate every one of those three maxims which have already béen conceded. First, we must presume that whát was done was not rightly done; secondly, that the station filled by" the plaintiff was not legally occupied. We cannot even stop here; we must go on, and not only presume fraud and misconduct, but take for granted perjury upon perjury; all the penalties of the register act incurred, and a long connected system of false swearing, as if by vocation. These are the mild inferences suggested on the part of the defendants; they are such as your honors will surely never make; we trust we are peculiarly justified on ask [*378] ing for those for *which we contend, because when reputation is accompanied with facts, it is good evidence. Per Gróse, J. in Roe V. Parker, 5 D. & E. 32. Here, then, was reputation accompanied with the fact of Peyton’s having commanded an American armed vessel, His citizenship is, therefore, established—
1st. By his domicil and employ.
2d. By the evidence of White.
3d. By reputation.
4th. By reputation accompanied with facts.
5th. By necessary and unavoidable presumption.
The last point is confined to the vessel, and resolves itself *475 into the abandonment having been made too late, and affcei an acquittal. It will be sufficient oh this, to remark, that whenever a legal right becomes once vested, and is exercised, subsequent occurrences do not affect it. On the capture, the plaintiff had a right to abandon; the acquittal of the vessel, as it does not appear to have been known when the abandonment was made, cannot invalidate the right. The only question, then, is, whether it was in due season. See ante, 53 ; Muir v. Unit. Ins. Co., note (a)
On looking at'the dates of the different circumstances, it' will be found that theré was an intervention of only 29 days from one period to the other. This, it is presumed, cannot be deemed too great a length of time, considering that the' news of the capture must have travelled from the Bahama Islands to Charleston, and from thénce to He'w York. Upon every ground, therefore, it is trusted the verdicts that' have been rendered will be confirmed.
Pendleton, in reply.
The cases of Barlow v. Vowel, George v. Pearce, and Rex v. Fox, proceed -on this ground; that a person who is a witness shall not, by a subsequent act of his own, deprive others of the benefit of his testimony.(a) The principles of admissibility are no where better laid down than in Omichund v. Barlcer.(b) There is no instance of a person not a citizen by birth or naturalization, being held an American citizen; and as' to the inference from his employ, he may qualify himself to be a master of á' vessel by his own oath. Hone of our objections *have been answered. In particular, that against [*379] paroi evidence of the register, for, if congress chooses to make it a record, this court cannot deny it'all the privileges of one.
*476 Livingston, J.,
delivered the opinion of the court. These are motions for new trials on the part of the defendants, and among the objections to the verdict it is alleged that George White who was examined for the plaintiffs, was an incompetent witness. This objection appears to me to be well taken [1] He was a creditor of the plaintiffs, who had given him an order on his agent, Thomas Napier, for the amount of his debt, to be paid out of the moneys to be recovered on the policies upon which those suits were brought, and had promised him the debt should be paid out of the same. This order was not accepted, but the witness said “he expected to be paid accordingly.” He added, that whether the plaintiff recovered or not, he should look to him for payment, as his right did not depend on the event of the suit. Here was an interest, in our opinion, sufficiently direct, and dependent on the event of the cause in favor of the witness, to render him incompetent. The order he had obtained amounted to an assignment of this property to the extent of his demand ; and the agent, after its exhibition to him would, at his peril, have parted with it to the plaintiffs, or to any other person. It is not a satisfactory answer to this difficulty to say, that White still retained his remedy against the plaintiff if this fund failed. If a bond be assigned, with a covenant on the part of the obligee or assignor that he will pay its amount in case it be not recovered from the obligor, would the court permit the assignee to be a witness in a suit on that bond ? I think not; and yet I perceive no great difference in the cases. Nor will it answer to say that Napier may have had a right to appropriate this money in another way. This might have been shown on his examination; as this was not done, we are not now to presume it contrary to the expectations of the witness himself, which, no doubt, arose from promises made - to him by the agent; for without some assur[*380] anee of the kind, he would have abandoned *every *477 hope from that quarter-. No -doubt can be entertained of Napier’s being the plaintiff’s agent-to recover this money. The bill was drawn on him- to pay out of this fund, which implies an authority to receive it. He had the policies, for he made the abandonment, and the case itself gives him that appellation. It was also said on the argument that it was not certain the agent would ever receive these funds, and until that was the case, White could have no claim on them. For this very reason he had an interest to place them in the agent’s hands, that his debt might be satisfied out of them. It is certainly dangerous to permit a person who has an interest, or who, on good grounds, thinks he has an interest, in a particular fund, to testify concerning it. , In. case of the insolvency of Peyton, there can be but little doubt that he might have compelled the agent in a court of equity, to pay his whole demand out of this money. 1 Yez. 832.
If a man promise a witness that if he recovers lands, he shall have a lease of them, this excludes his testimony. 2 Keb. 576. So, if a person be promised payment out of the sum in controversy, which is the case here, he ought to be excluded, unless he will release(a) such interest. As that *478 was not done here, the court is of opinion a new trial ought to be had, with costs to abide the event of the suit.
Lewis, Ch. J.
There is no difference amongst us in this cause, but on the point on which .the court have set aside the verdict, viz. the competency, of Mr. White, the witness produced on the part of the plaintiff. I do not concur in the opinion that he was incompetent. The bill drawn in his favor on Napier, the agent, has never been accepted, nor has the fund out of which it was to be paid, ever come .to his hands. White, then, in my conception, had no interest in this fund. The doctrine of lien, has never, that I know of, been extended so far as to vest an interest in one man in a fund which may or may not come into the hands of another. Neither of the cases relied on go to such extent. In Row v. Dawson, Swinburn was in possession of the fund, and Lord Chancellor Hardwicke considered the bill of Gibson as an assignment to the amount of [“381] *the draft. In Powel v. Gordon, the witness was himself the agent who was to receive the fund, by *479 virtue of a special power for the purpose, and refused to let it go into the hands of another, which, had he' assented to, would, we are to infer, have established his competence. In our case the power was in the hands of a third person already; and, therefore, within the spirit of the decision in Powel v. Gordon, White was a competent witness.
New trial ordered.

 See Code of Procedure, sec. 398.

 The principle on which a release makes a witness competent is, that it destroys his interest in the suit, or liability to the parties to it. When, therefore, it will not have that effect, the witness continues inadmissible; as a bankrupt nnder a second commission, though he release his interest in the estate, unless it has paid 15s. in the pound, for he has an interest in increasing his estate to that amount, in order to discharge his future effects. Kennet v. Greenwollers, Peake’s Cas. 3. So a person who appears from the testimony in the cause to be a partner with the defendant, but not sued, cannot, by a release from the defendant, be made a witness for him, because, though such release would discharge his contributory liability to the defendant a< law, he would still, in case of the defendant’s death or insolvency, remait liable in equity to the plaintiff. Cheyne v. Koops, 4 Esp. Rep. 112. Contra, Young v. Bairner, 1 Esp. Rep. 103. It follows, that when a witness is liable to the party for whom called, he cannot testify without a release from such party; as an owner of a house, called by a plaintiff who has done work upon it, to show that the defendant is liable, in virtue of a contract for a certain sum, to make all the repairs and pay the workmen; (New v. Chidgey, Peake’s *478 Cas. 98,) or a barge-master for a shipper, in an action for occasioning the loss of his goods by sinking the barge; (Spilty v. Bowens, ibid. 53,) or an owner of a ship to prove her seaworthy in an action against an underwriter; Rotheroe v. Elton, ibid. 84,) or a captain of a vessel, to prove for an underwriter, where the loss was stated to be by barratry, that the acts done were by the consent of the owners. Bird v. Thompson, 1 Esp. Rep. 339. Observe, that a release by one joint owner will extinguish the interest of all. Hotchkiss v. Mitchell, 4 Esp. Rep 86. Where there is no liability, a release is superfluous; as to a servant, who merely delivers out goods, by his master when called to prove the delivery. Adams v. Davis, 3 Esp. Rep. 48. A grantor with warranty, on being released as to his covenants by his grantees, is competent to prove as well as disprove fraud in his deed. Jackson v. Frost and Haff, 6 Johns. Rep. 135. A late case has decided that a husband of a deceased wife may be a witness for her administrator on executing a release to him of all the witness’s right, &c., in what might be recovered by tho administrator in that suit. Woods v. Williams, 9 Johns. Rep. 123. If the doctrine in Cheyne v. Koops be law, there would seem to be an interest in ihe witness susceptible of release only by the defendant; the costs, if tho Suit were determined against the plaintiff, out of the estate of the wife, to which the husband was entitled.