Tilghman C. J.
On the trial of this cause the judge reserved a point for consideration. Supposing the ship to have been voluntarily run on shore with a view of preserving as. far as possible both ship and cargo, is it a case of general average ? The defendant says it is not, because the ship was totally lost. But it is conceded, that if the ship had been only damaged, the cargo, which was saved, would have been liable to contribution. If this be the law, it will be difficult to assign a reason for it;- because the result is, that for a small loss there shall be compensation, but a great loss is to go without compensation. The principle of general average is, that “ what is' given for the benefit of all, shall be made “ good by the contribution of all.” This principle is recognised by the Rhodian law. It happens, that the case put in that law is i\ jettison. But the reason for contribution is the same, whether the object sacrificed be ship or goods. The law of average is founded on policy and on equity. On policy, because there are men, who would risk the loss of life and fortune rather than sacrifice their property without com-' pensation. On equity, because nothing can be more reasonable, than that the property saved should contribute to make good the loss, which was the cause of safety. It is to be understood, that this loss was incurred voluntarily, in time of imminent danger, and with a" view to the general good, because without these concurring circumstances there would be neither policy nor equity in contribution. It is to be understood too, that the object in view, that is, the preservation of ship and cargo, has been in whole or in part effected. If goods are thrown overboard to lighten the ship, notwithstanding which she is wrecked, neither the ship nor the goods which happen to be saved, shall contribute, because they .were not saved by means of the jettison. But if the jettison preserves the ship and cargo from the impending danger, and afterwards the ship is wrecked in consequence of a new peril, %vhat is saved of the cargo shall contribute, because it would not have been saved, but for the jettison. It appears to me that some confusion has taken place in the law respecting average, from not attending to the distinction; between cases ofjettison and running the ship on shore. In case of a jettison., the object in view is not attained unless the ship is saved; the goods which chance to be saved, are not saved by means of the jettison. The reason for contribution, there *256 fore, fails. But where the ship is run on shore, the object in view, so far as concerns the cargo, may be completely obtained, though the ship be totally lost; because the goods are saved by means of the loss of the ship. There might be a case of jettison resembling the total sacrifice of a ship; that is to say, the jettison of the whole-cargo. Such a case could rarely occur, and I believe never has occurred, but may be imagined; and if it should occur, I see no reason why the ship should not contribute. In time of imminent danger general safety is the object, and ship and cargo are considered as one. Either may be sacrificed in part or in whole, and whether in part or in whole, makes no difference, so far as regards the equity of demanding contribution from that which is saved. I have given my opinion on this case upon principle. But it is necessary to consider it also upon authority; for of such importance is certainty in the law, that I should not think of setting up my own opinion, against a series of unconflicting decisions.- Among foreign jurists we have in favour of general average, Bynkershoek, Voet, Valin, Browne on the law of admiralty, and the ordinances of Friezland, Antwerp,and Konigsberg. Gn the opposite side are Emerigon and Huberus. At home we have the Circuit Court of the United States for this district, and Judge Story in his edition of Abbott, for the average, and the Supreme Court of New Fork against it. The cases were cited in the argument, and therefore I do not refer to them by book and page. Among foreigners, the weight of authority appears to be in favour of average. Between the respectable judges of our own country, I make no comparison. Suffice it to say, that the weight does not incline so decisively on either side, as to prevent this Court from following its own opinion. I feel myself free, therefore, to say, that I agree with my brother Yeates, who directed the jury to consider this as a case of general average.
Besides the reserved point, the defendant’s counsel have assigned two reasons for a new trial. First, That no freight was due. Second, That the judge erred in law in his direction to the jury to estimate the ship according to her value at the commencement of the voyage, making allowance for wear and tear, and any deterioration which might have taken place prior to her stranding. 1. As to freight, it is due pro rata according to the principles laid down by this Court in *257 Armroyd v. The Union Insurance Company, and Callender v. The Insurance Company of North America, when 'the consent of the merchant, either by words or by actions, has been expressly given, or may be fairly inferred, to accept his goods at an intermediate port. In such case the original contract is dissolved, and a new one ¿rises by implication. In the present instance there was a supercargo on board, to whom the goods were consigned, and to hint they were delivered at Algesiras, a port not far distant from the port of delivery, and from which they might have been carried, and no doubt would have been carried to the port of delivery, had the supercargo desired it, or had the Captain supposed that the consequence of not carrying them there, would have been the loss of the whole freight. It is material, that the market at Algesiras was better than at Cadiz; so that the supercargo could have had no motive to desire that the goods should be carried to Cadiz; but it appears plainly by the evidence, that had Cadiz been the better market, they would have been carried there, because the supercargo went to Cadiz, compared the markets at the two places, and at one time seems to have had an intention to transport part of the cargo to Cadiz. There is no proof of an express offer on the part of the Captain to carry the goods to Cadiz, or of an express agreement between the Captain and supercargo, that they should be delivered at Algesiras, paying freight pro rata. But considering the whole evidence, it is impossible to entertain a doubt that the cargo was voluntarily received, by the supercargo at Algesiras, with knowledge that if he chose it, the Captain would find means to transport it to Cadiz. It was suggested, but not much insisted on, that the supercargo had no right to receive the goods at any place short of the port of destination. Indeed it ought not to have been insisted on ,• for surely in case of shipwreck the supercargo, from the nature of things, must have power to act for his principal. If he has not, who has, and what is to become of the cargo? Upon the whole, then, there can be no doubt that freight pro rata was due.
2. The jury, under the charge of the judge, estimated the ship at her value when she commenced the voyage, deducting one-fifth for wear ancl tear, &c. To this the defendant objects, and says, that the estimate should have been the price that the ship would have brought at Algesiras. In case of a jettison the rule is now fixed, that the goods thrown over *258 board, shall be valued at the price they would have beeu worth at the port of delivery. This is a just estimate, bccauge ¡j pUts the owners of the lost goods, upon the same footing with the owners of those which were saved, and it has the advantage of being easily-reduced to practice ; the price actually brought by the goods saved, at the port of delivery, serving as a standard for those which were lost. But the case is different when contribution is to be made for a lost ship. We have no such standard there, by which the value can be regulated. The object of contribution being to make good the actual loss, the rule to be adopted should be such, as will most probably ascertain the actual loss. All agree in saying, that the loss is the value of the ship at the moment preceding the loss. But what is that value and how is it to be ascertained ? The defendant contends, that it is the sum the ship would have sold for at Algesiras or Gibraltar, and insists on the impropriety of valuing the goods by one rule and the ship by another. But the same reason does not hold for the valuation of the goods and the ship. The goods are intended to be sold at the port of destination, and being selected for that market, may be supposed in general to fetch a good price there. Not so the ship, which in many cases delivers her cargo and returns to the place where the voyage originated, her owners having had no intention to sell her at the port of delivery, which they may have known to be no market for ships. It would seem more just, therefore, to value the ship according to the price she would have borne-at the place where the voyage commenced, deducting the expense of carrying her there. It is impossible to come at this exactly in any instance, and yet it is desirable to have a rule calculated to do justice in general. In cases where the ship has suffered no greater deterioration than the usual wear and tear of a voyage across the Atlantic, it has been supposed by some, that a deduction of one-fifth from her value at the time of commencing the voyage, would do justice. (Leavenworth v. Delafield, 1 Caines, 572. cited in 2 Condy's Marshall, 545.) This is the rule at New York, and the jury adopted it in the present case. Iam the more inclined to be satisfied with it, as it is more equitable, more certain, and less liable to accidental fluctuation, than the rule contended for by the defendant. Different nations entertain different ideas on this subject.. Frame has thought proper to value the ship at the com- *259 inducement of the voyage, striking off one-half of the whole value, and adding half of the freight. 1 Emerigon, 651. 2 Valin, 194. art. 7. Id. 195. Hamburg fixes the value at the commencement of the voyage. 2 Magens, 237. art. 8. England takes the value of the ship at the end of the voyage, but whether this value is ascertained by the price at the port of destination, does not clearly appear, although Parke, Marshall, and Abbott seem to express themselves as if they so understood it. Parke, 127. (5th edit.) 2 Marsh. 545. Abbott, 395, 396. (Story.) It is to be observed, however, that cases like the present, where contribution is to be made for a ship totally lost, seldom occur. In general.the valuation of ships is made for the purpose of ascertaining how much they shall contribute towards other losses. Finding no certain rule on the subject, and not perceiving that any which has been proposed is better calculated to do justice, than that which was recommended by th.e judge who tried this cause, I agree with him in opinion, and am therefore against a new trial.
Yeates J.
A point was reserved on the trial of this cause at the desire of the counsel on both sides: Whether if a ship be voluntarily stranded and part of the cargo be saved, the vessel shall not be the subject of general average, although she be totally lost. The learned and laborious opinion of Judge Washington, in the Circuit Court of the United States for this district, delivered in May, 1814, between Caze v. Richards and Reilly, has fully satisfied my mind upon this question.
I will not enter into a detail of the arguments he has made use of, or the authorities he has cited and answered in support of his legal conclusion, but shall content myself with observing, that his masterly system of reasoning contains the most just and correct inferences from the true principles of the Rhodian law according to my apprehension, and conveys to my mind full conviction upon the subject in question. I have no hesitation, therefore, in declaring, that the ship Apollo under the events which have occurred should be contributed for as general average. As to the reasons urged for a new trial, I see no ground for an alteration of the sentiments I gave in charge to the jury.. I trust I never shall be so entirely wedded to any opinion as not willingly to retract it upon being satisfied that it was erroneous. Independently *260 of the expressions of the defendant in his letter of instnjq- ~ tions to Jesse Wain, “ to usfe his best endeavours to dispose “ of the goods consigned to him for the highest price that “could be obtained for them,” of the terms of the bill of lading signed by Captain Bell, that “ the goods were to be “ delivered to Jesse Wain, or his assigns at Cadiz, (the dangers of the sea being excepted.)” I conceive that the supercargo, to whom the articles of merchandise were consigned, had the unquestionable right of determining for his constituents what ulterior measures should be pursued in cases of loss or detention or other cases of necessity superinduced by unforeseen events. The known representative of the shipper on board the vessel, in the absence of the principal, can alone decide on receiving or rejecting the goods at an intermediate port. The master of such vessel w-ould never think of asking the inspection of his employer’s instructions in such an emergency. It is obvio'üs, tliat it would be an idle ceremony to offer to cari-y the merchandise to the port of destination, where the shipper or his agent dispensed with it, either verbally or by an unequivocal act on the part of the persons interested. Such acts would operate more powerfully in a controversy between the owners of ships and the proprietors of the shipments respecting freight, pro, rata itineris, where each party had their avowed agent at the intermediate port, than as between the insured and underwriters. It was submitted to the jury as a fact to be decided by them, whether the supercargo did not receive the goods of his own free-will and accord at Algesiras, and from their verdict we are bound to presume, that he voluntarily accepted the goods at that port. This brings, the case within the principle laid down by. this Court in Armroyd v. Union Insurance Company, (3 Binn. 437.) and in Callender v. Insurance Company of North America, (5 Binn. 525.) It cannot be asserted, that the verdict has not strong evidence to support it.
The market at Algesiras was preferable to. that of Cadiz, but the jury were ekpressly told, that in no other view than to enable them to form a judgment of the grounds.on which the supercargo probably proceeded, was the relative state of the markets material. The indorsement on the bill of lading-drawn up in the handwriting of Jesse Wain, and signed by Captain Bell, that he had agreed to a deduction of forty cents' per barrel.upon the freight, in consequence of the cargo being *261 landed at Algesiras, powerfully shows that he gave his full assent there to receive them. An agreement is the act of two minds at least. But with whom could he contract, as to the rateable freight, except with the supercargo? The letters of' Jesse Wain to Gray and Taylor; his account of sales, made by his order; remitting the nett balance to Bainbridge and Brown, in London; and the account current which he drew up between the plaintiffs and defendant, wherein he charges the latter with 150/. paid by him on account of the freight, are proofs that at the time of these several transactions, he took it for granted that the new contract made for freight, was binding on his constituent,
I told the jury on the trial, that Jesse Wain had acted lawfully and prudently, in making this contract. I went further, and submitted to them whether, if Mr. Robert Wain had been at Algesiras, a due attention to his own interests would not have led him to have pursued the same line of conduct which his supercargo had done. It has been urged, that the rule laid down to the jury, whereby the value of the Apollo was to be estimated, was incorrect. The ordinances of foreign nations fui'nish different rules on this subject, but all of them profess the principle, that contribution should be a complete indemnity to the party whose property has been sacrificed for the common good. These regulations are arbitrary, but are considered as adapted to the state of commerce of each particular country. In France, and many other of the continental states, contribution is made in some cases, for the whole, in others, for a moiety only, of the value of the ship, and of the gross freight. Abbott 345. In England, a ship is valued at the sum she is worth at the time she sails on the voyage insured, including every expense of the outfit, to which is added the premium of insurance. 2 Marsh. 623. In New York, the contribution is thus apportioned ; on the cargo, valued at its first cost and charges, at the port of departure ; on the vessel, valued at four-fifths of her actual value at the same place, exclusive of outfits, and on the freight at one half the gross amount, payable in the event of a successful performance of the voyage. Leavenworth v. Delafield. 1 Caines, 373.
Where it is said in Abbott, 345, that in England the owners contribute according to the value of the ship at the end of the voyage, and the clear amount of the freight, after deducting *262 the wages of the crew and other expenses of the voyage, I ' understand the author to mean, the true value at the end of the voyage, as contradistinguished from her real worth when the voyage commenced. I never can subscribe to the defendant’s doctrine, that the place where the voluntary stranding happened, can form the principle'of decision in the estimate. If it took place on a desert island, or at Otaheite, where no trade from foreign countries is carried on, such a rule would be pregnant with injustice: nor should I deem Gibraltar a proper place under the circumstances of the present case, in order to determine the value of the Apollo there, because it was shown in evidence by Captain Edward Warrington, that, although she would have commanded only between seven and eight thousand dollars in that port at market, she was, in truth, worth much more. It was a port of deep speculation, where vessels were sacrificed when sold. I adhere to the principles I laid down on the trial, that she should be estimated at a fair price, such as she would have brought in an appropriate place, where the American character of shipping was duly appreciated, in the state wherein she floated immediately before she was run ashore. If her hull, sails, or rigging had been deteriorated by storms, or by wear and tear, she was not to be estimated at the sum she would have commanded when she sailed from the first port on her voyage. I still think this to be the only practical rule which can meet the real equity of such cases, that its correctness is warranted by 2 Magens, 58, and that the principle on which goods are valued which have been sent abroad for sale, differs essentially in the case of a carrying ship, whose return to her original port may be fairly calculated in ordinary cases. The jurors had sufficient data on which they might form their estimate, and the value of the ship which they have found, is satisfactory to my mind. I am of opmion that the motion for the new trial should be overruled.
Buackenridge J. was absent, from indisposition, but informed the Chief Justice that he concurred.
New trial refused, and judgment for the plaintiff.