## SEAVER *vs.* BRADLEY.

Where the plaintiff had declared that he was indebted to one offered as a witness, to whom the money sued for, when recovered, was by agreement to be paid over; it was held that this agreement was no assignment of the debt, and therefore did not go to the competency of the witness, but only to his credibility.

B. gave to S. a collateral guaranty containing these principal words—" I have consented, and now hereby promise to you, that I will be ultimately accountable to you for the sum of one hundred and fifty dollars, if the said H. shall purchase goods of you, and should fail to pay you for them." On the same day S. sold to H. goods to that amount, on a credit of six months. No notice was given by S. to B. of the acceptance of the guaranty, or the sale of the goods; but about five months afterwards H. was summoned as the trustee of S. by one of his creditors, and employed B. to prepare his disclosure, in which it was stated that he owed S. 110 dollars for goods sold. After the lapse of about sixteen months more, S. and his creditor entered into a compromise, by which the debt was paid, but the trustee-process was kept on foot for the benefit of S. who was to receive, to his own use, the money which might be obtained from the trustees. Judgment was accordingly rendered against S. and his trustees, of whom H. was one, and of whom the money was regularly demanded by the officer holding the execution; but nothing was paid by H. nor had any change taken place in his circumstances. Afterwards the execution was discharged. It was held that the guaranty was not absolute, but contingent;—that B. had sufficient notice;—and that as the judgment in the trustee-process had been assigned to S. and could therefore no longer endanger H. in making payment to him, it was no bar to an action by S. against B. on the guaranty.

THIS was an action of *assumpsit* on a stipulation of the defendant, by way of letter addressed to the plaintiff in the following terms :— " Sir, *Stephen Heald*, Esq. of *Lovel*, wishes to purchase a few goods, with a view, as he informs me, to retail them from the store he now occupies, lately occupied by *Philip C. Johnson*, Esq. at *Lovel* corner. I have no connexion whatever with said *Heald*, or interest in his business; but am disposed to aid him, at least so far as I can do it without involving myself in his concerns. With a view therefore to encourage him, and to try his skill and talent in trade, and to test his judgment, as well as his integrity and punctuality as a trader, I have consented, and now hereby promise to you, that I will be ultimately accountable to you for the sum of one hundred and fifty dollars, if

the said *Heald* shall purchase goods of you, and should fail to pay you for them; provided however, and you are distinctly to understand, if said *Heald* should open an account with, or continue, after the goods you may now entrust to him, to purchase goods of you, that the first hundred and fifty dollars, which shall be paid to you by said *Heald*, shall discharge me of this promise, and of the responsibility hereby assumed; as I will not be responsible for this hundred and fifty dollars beyond the period when the said *Heald* shall have paid you that amount, whether he continues to purchase goods hereafter of you or not; and whenever you shall have received of the said *Heald* to the amount of the said one hundred and fifty dollars, it is to be hereby understood that I am to be discharged from my responsibility on this promise. *Portland, Aug.* 4, 1825." On the back of this letter was this indorsement made by the plaintiff;—" *Portland, Jan.* 27, 1826. Received of *Stephen Heald*, Esq. forty dollars cash on the within."

On the day of the date of the letter, the plaintiff sold goods to *Heald*, to the amount of $150 61, on a credit of six months; which he had ever since been of sufficient ability to pay. The earliest notice which the defendant had of the acceptance of his guaranty, and of the sale of the goods, or of any thing concerning the subject, was on the 19th day of *June*, 1826; and the only proof of such notice was derived from the fact that on that day the defendant, in the course of his business as a counsellor at law, drew up a disclosure made by *Heald* in a suit in which he was summoned as the trustee of the plaintiff, containing this statement. " On the day of the service of the plaintiff's writ upon him in the said suit, he was indebted to the said *Seaver* on a balance of account for goods sold by said *Seaver* to him, in the sum of one hundred and ten dollars and sixty one cents; which he is ready to pay over to the said *Seaver*, or otherwise, as the court shall direct."

That trustee process was commenced by *Titcomb & Sumner*; and on the 17th day of *Oct.* 1827, the action was settled, agreeably to the tenor of the following agreement between *Titcomb* and *Seaver*; of the contents of which the defendant had notice before the commencement of the present suit :—" *Portland, Oct.* 16, 1827. It is

hereby agreed by the undersigned *Moses Titcomb* and *Horace Seaver*, that in consequence of said *Seaver's* securing to said *Titcomb* the sum of one hundred and seventy two dollars, that said *Titcomb* will, and hereby does relinquish and discharge said *Seaver* from all claim and demand by reason of said *Seaver's* note to *Titcomb & Sumner*, on which an action is now pending in the Supreme Judical Court, together with said action; and said *Titcomb* agrees to pay the cost in said action. But it is agreed that the action shall stand in court till a final adjudication upon the question there depending upon trustee process, and that judgment may be entered upon said action, which is, however, to be prosecuted for his benefit; and the judgment, and the execution which may be issued thereon, are hereby transferred to said *Seaver*, as well as whatever may be received of *Bradley & Warren*, *Burbank & Hanson*, and *Stephen Heald*, trustees therein named." Accordingly judgment was entered against *Seaver*, and some of the trustees, of whom *Heald* was one; and the execution issued thereon was fully discharged on the day preceding the trial of this action; but nothing was paid by *Heald* on the execution, though duly demanded by the officer, on the 1st of *Jan.* 1828.

At the trial the plaintiff offered *William Willis*, Esq. as a witness, to whom the defendant objected on the ground of interest; and proved that the plaintiff had said that he was indebted to Mr. *Willis*, to whom the sum sued for, when recovered, was to be paid over, on account of the debt due to him. But the Chief Justice, before whom the cause was tried, admitted the witness, and directed a verdict to be returned for the plaintiff, subject to the opinion of the court upon his competency, and upon the question whether, upon the whole case, the action was maintainable.

*N. Emery*, for the defendant, argued that the witness had a direct interest in the suit, because the money, when recovered, was to be paid over to him, in part of his demand against the plaintiff. The contract between them was in equity an assignment of the debt, sufficient, in the event of *Seaver's* death, to prevent its distribution as assets among his creditors. And wherever the legal operation of the testimony is to create or increase a fund on which the witness

Seaver *v.* Bradley.

has a direct claim, he is excluded. *Pierce v. Chase*, 8 *Mass.* 487 ; *Powel v. Gordon*, 2 *Esp.* 735 ; 2 *New Rep.* 231 ; 5 *Taunt.* 183 ; *Peyton v. Hallet*, 1 *Caines*, 303.

The contract, he contended, was in its nature collateral and contingent ; the liability of the defendant not being absolute, till legal process had been resorted to against *Heald*, without effect. But here was no proof of any diligence used to enforce the demand against the original debtor.

Nor had any notice been given to the defendant that his offered guaranty was accepted, nor of the amount of the debt for which he was held liable. It was only for the original investment that the defendant stipulated at all ; nor for this, but upon the contingency of *Heald's* commencing trade, in a particular town and store. Before the defendant could be bound, it was the duty of the plaintiff to have given him seasonable notice that all the events had happened upon which his engagement depended, and of the amount of the original purchase made upon his credit. 2 *Stark. Ev.* 649 ; *Tyler v. Binney*, 7 *Mass.* 479 ; *Sage v. Wilcox*, 6 *Conn. Rep.* 81.

And he urged strongly that the proceedings in the foreign attachment at the suit of *Titcomb & Sumner*, had bound *Heald* to them, with the plaintiff's assent, wholly changing the relations between them ; and that this operated to absolve the defendant from the contract ; as, after that, he could not be protected in any payment he might make to *Seaver*, nor avail himself of any transactions between the attaching creditors and *Heald*. 10 *Johns.* 587.

*Longfellow* and *Willis* for the plaintiff.

MELLEN C. J. delivered the opinion of the Court at the ensuing term in *Lincoln*.

The objection to *Mr. Willis*, as a witness, seems not to be sustained by the authorities. In *Powel v. Gordon*, the witness offered was examined on the *voir dire*, and in that mode the objection was supported. The witness was acting under a power of attorney ; and on his examination, he stated that he expected and intended to pay himself out of the money when recovered, and expressly refused

Seaver *v.* Bradley.

to consent that any other person should receive it; and he was accordingly rejected. In *Peyton v. Hallet,* 1 *Caines,* 363; *White,* the witness offered, held an order drawn by the plaintiff on his agent for the amount of his debt, to be paid out of the monies sued for. This order, the court said, amounted to an assignment of the property. We have decided the same principle in *Robbins v. Bacon,* 3 *Greenl.* 346. In that case it was observed that a bond or note might be assigned for a valuable consideration by mere delivery. But in the present case there is no proof of any act on the part of the plaintiff, amounting to an assignment, by means of which the rights of *Seaver* could be controlled by *Willis.* The other two cases cited, as to this point, seem not to be applicable to it. Mr. *Willis,* in this cause, having no vested right to the sum demanded, stands in a very different situation from a creditor of a bankrupt, or of one who has died insolvent. There, his rights to a dividend are by law established. In such a case, if *Willis* was a creditor, he could not be a witness to increase the fund. He does not appear to have any vested interest in the sum demanded, as before stated. If recovered, he is to receive it, and apply it towards payment of the debt due to him from the plaintiff. If not recovered, the witness must endeavor to obtain payment in some other way. The objection goes only to the credit of the witness and not to his competency. We accordingly overrule it, and proceed to the examination of the cause on the facts reported.

The defendant's guaranty is in these words: "I will be ultimately accountable to you for the sum of one hundred and fifty dollars, if the said *Heald* shall purchase goods of you, and shall fail to pay you for them." We are not prepared to decide that the word "ultimately" must receive the construction given to it by the defendant's counsel. It does not mean that he would pay at some indefinite period; but we consider the fair meaning to be that if *Heald* should not comply with the terms of his engagement, as to the payment for the goods purchased, then, on due notice of the advances made on the faith of the guaranty, he would be accountable and pay for such advances, not exceeding the limited amount. It appears that the goods were sold and delivered to *Heald* on the 4th of

*Aug.* 1825, on a credit of six months; which term of credit expired on the 4th of *Feb.* 1826 ; and the trustee process was not served on him till the 20th of *March* following ; so that during six weeks and more, he failed to pay according to his contract, before he was barred from paying by means of the service of the process. On this ground, therefore, the case is brought within the terms and legal meaning of the guaranty. But even upon the defendant's hypothesis, it appears that some months before the commencement of this action, namely on the 1st of *Jan.* 1828, the plaintiff caused a demand to be made on *Heald* for the money due for the goods sold. This demand was made by virtue of the execution which was issued on the judgment in the trustee process; which judgment and execution were then the property of *Seaver*, as appears by the agreement of the 16th of *Oct.* 1827, between him and *Titcomb & Sumner.* Notwithstanding this demand, no payment was made. We are not able to perceive any thing substantial in this part of the defence. We therefore pass on to consider the question of notice.

We have decided in the case of *Norton v. Eastman,* 4 *Greenl.* 521, that in cases of antecedent guaranty, the guarantor is only conditionally liable ; and that to render his liability absolute, he must have notice, in a reasonable time, of the acceptance of the guaranty, and of the advances made on the strength of it. It has been contended that the guaranty in the case before us is an absolute one ; we think it is not ; and by comparing it with the case put by way of illustration in *Norton v. Eastman,* in the opinion of the court, this will manifestly appear. In the present case the guaranty to the specified amount was given by the defendant before any goods were purchased by *Heald ;* the words are, " if *Heald* shall purchase goods of you, and shall fail to pay you for them." In such a case the guarantor must have reasonable notice that the expected advances have been made, so that he may seasonably take all prudent or necessary measures for his own security against eventual loss. What amounts to reasonable notice, depends on the circumstances of each case, and is therefore partly a question of fact, and partly a question of law. When the facts are found or agreed, it is then a question of law. Such is the case before us. The first notice which the defendant

was proved to have had, was on the 19th of *June*, 1826. The report states that *Heald*, at the time of the trial, was, and ever since the goods were delivered, has been possessed of property more than sufficient to pay the amount due from him to *Seaver*; so that the want of earlier notice to the defendant has in no degree operated to the prejudice of his interests or his rights; nor does it appear that he ever was desirous of obtaining security of *Heald*, after he had notice as abovementioned. In *Creamer & al. v. Higginson & al.* 1 *Mason*, 324, Mr. Justice *Story* states the law in these words: "If notice was not given in a reasonable time, nor until after a material change in the circumstances of the debtors, such *laches* discharges the defendants." In that case no notice was given till after the lapse of more than three years; and in the meantime those to whom the credit had been given became insolvent. In *Russel v. Perkins*, 1 *Mason*, 371, the notice was delayed for twelve years. In both instances it was held insufficient. It has been urged that notice must, in these cases of guaranty, be immediately given. That word is used by *Marshall C. J.* in the case of *Russell v. Clark's* executors, 7 *Cranch* 69; but it was no point in the cause; for in the same sentence he had declared that there was no proof of any guaranty. In a note in 2 *Starkie*, 649, stating the point settled in *Beekman v. Hale*, 17 *Johns.* 134, the American Editor says—"it is the duty of the person giving credit to another on the responsibility or undertaking of a third person, to give notice immediately to the latter of the extent of his engagements." But the meaning of the word, as there used, may be learned by the fact that in that case notice had not been given, till after the lapse of more than two years, and an intervening insolvency. The case at bar is therefore very different from all those we have mentioned, in every material respect. The particulars of the variance need not be repeated. Viewing all the features of this case, we do not feel at liberty to decide that the defendant had not reasonable notice of those facts necessary to give an absolute obligation to his guaranty.

The last point for our consideration is the question whether the trustee process, pending and conducted as stated in the report, furnishes a defence to this action. While it was pending, as the suit

and for the benefit of *Titcomb & Sumner, Heald* was not authorised to pay the debt to *Seaver*, though he might and ought to have paid it before the process was served on him ; and the rendition of the judgment in that case against *Seaver* and the trustees, would, according to the case of *Perkins v. Parker*, 1 *Mass.* 117, and *Wood v. Partridge*, 11 *Mass.* 488, have been a bar to an action by *Seaver* against *Heald* ; and for the same reason, perhaps might have been a bar to the present action ; provided the settlement and agreement made and entered into on the 16th of *Oct.* 1827, between *Titcomb & Sumner* and *Seaver*, had not changed the rights and liabilities of the parties in that and the present suit. By that agreement, of the contents of which the defendant had notice before the commencement of this action, it appears that from the time of its execution, *Titcomb & Sumner* ceased to have any demand against *Seaver*, or control over the action ; which, however, was to proceed to judgment against both principal and trustees ; so that *Seaver* might, in that form, avail himself of all the benefits of the process, as it respected the property in the hands of the trustees. This could not be any injury to *Heald ;* nor do the facts furnish any evidence of fraud or collusion, as suggested in the argument of the defendant's counsel. The whole interest in the judgment, and control over it, being thus transferred to and vested in *Seaver*, by the agreement of *Oct.* 1827, the reason of the principle established in the cases of *Perkins v. Parker*, and *Wood v. Partridge*, had ceased in respect to *Heald*, the trustee ; for he never could be injured by paying the amount of the debt to *Seaver*, as no one, but he, could enforce the payment of the judgment in the trustee process. When this action was commenced, that process was as though it had never existed, in respect to *Heald's* original liabilities, because *Titcomb & Sumner* and *Seaver* had become identified by the agreement. This case resembles that of *Fowler v. Parker & Stearns*, 3 *Mason*, 247. In that case it appears that judgment had been rendered against them as the trustees of *Fowler*, in a former suit which was commenced by *Tarbel & Eveleth.* The judgment was rendered on default after a continuance for two years, *Fowler* being out of the State. But as no bond had been given, as by law required, no execution had

ever issued ; and as none could be obtained on *scire facias,* it was decided that the action by *Fowler,* the principal in the former action, was maintainable, because they were in no danger from the judgment in that process ; and the court considered the principle of the two cases last mentioned as not applying. As the judgment in the trustee process, in the circumstances of this case, would not bar a suit against *Heald,* for the same reason it will not bar the present action. Our opinion is that a new trial ought not to be granted, on either of the grounds suggested.

*Judgment on the verdict.*