## LAPREESE and Wife v. FALLS and Others.

In a suit in chancery, the Court may take the opinion of a jury as to any of the facts in controversy.

The R. S. 1843 did not alter this rule of practice.

Suit by part of the heirs of *A.* against the heir at law and legatee of *A.*'s administrator, for an account of the administration, &c., charging that the administrator had failed to account for the assets received, &c., and had not made final settlement, &c., and that the assets exceeded the amount of the debts, &c. *A.*'s widow was offered as a witness to prove maladministration, and *B.*, who

May Term, 1856.

LAPREESE
v.
FALLS.

was a creditor of the estate, was also offered as a witness to prove that the administrator had failed to account for assets received, &c. Decree for the plaintiffs for the whole amount of the *devastavit* found.

*Held*, that *A.'s* widow, even if, as such, or as heir at law of a deceased child of *A.'s*, she was entitled to a share of the estate in distribution, the suit not being for her benefit, was a competent witness.

*Held*, also, that *B.* was incompetent.

*Held*, also, that the decree for the whole amount of the *devastavit*, was erroneous.

A witness is not competent to create a fund by his testimony for his own benefit, nor to increase one out of which he is entitled to a distributive share; but where the fund is ample, as in the case of a solvent estate, a creditor is a competent witness.

If a witness, incompetent under the former practice, was erroneously admitted to testify, the error is not cured by the fact that the witness, on a future trial, would be competent.

ERROR to the *Parke* Probate Court.

*Thursday, June 19.*

GOOKINS, J.—*Falls* and wife and *William McElrath*, as heirs at law of *James McElrath*, deceased, brought their bill in chancery against *Lapreese* and wife, the latter being heir at law and legatee of *Jacob Kiger*, deceased, who was administrator of the estate of said *James McElrath*, for an account of said administration.

The case made by the bill is substantially this: That *McElrath* died in 1824, and *Kiger* was appointed administrator of his estate, who received personal property of the decedent worth 385 dollars; that he collected debts due the intestate to the amount of 800 dollars, and sold a tract of land which the deceased had purchased and paid for in part, for 200 dollars, and became himself the purchaser, which he resold for 200 dollars and 25 cents; that the estate of *McElrath* was not indebted except for funeral expenses and the balance due on the land; that he made no settlement of the estate; that he invested the assets in merchandise on his own account, and made large profits; that he sold said land unnecessarily, and without authority, or if he obtained an order of Court for its sale, it was done by fraud; and that the defendants had received assets from their testator more than sufficient to satisfy the plaintiffs' demand.

The defendants pleaded, 1. That *Kiger* fully administered all the estate of the decedent that came to his hands.

2. That *Kiger* made a full and final settlement of the estate of said *McElrath*, which was confirmed by the *Parke* Probate Court; that afterwards, in 1829, one *Elisha Givens*, who had been duly appointed guardian of the said *Margaret* and *William*, brought his bill in chancery against said *Kiger* in the *Parke* Circuit Court, for the same matters mentioned in the present bill; that the cause was tried and determined in favor of *Kiger*, and that the record of said proceedings had been destroyed by fire. 3. The statute of limitations.

In support of the pleas, the defendants answered, admitting *Kiger's* appointment as administrator of the estate of *McElrath*, and that they had received assets, as his devisees and legatees, sufficient to satisfy any demand that might be established against them. They deny all the allegations of maladministration charged in the bill against *Kiger*. They allege that the estate of *McElrath* was insolvent, and was settled as such; that he proceeded regularly, and obtained an order for the sale of the real estate, and sold it accordingly, in good faith; that all the records and proceedings are burnt; that knowing their claim to be groundless, the plaintiffs had delayed until the death of *Kiger*, who was old and infirm, to prosecute their suit, for the purpose of obtaining an unjust advantage.

On the pleas issues were taken, similar to issues at law, and the affirmative matter in the answer was put in issue by a replication.

The Probate Court ordered issues to be formed, to be tried by jury, upon the important points contested by the parties, which was done. The facts to which the jury were required to respond were, 1. The amount and value of the estate of *McElrath* which came to the hands of *Kiger* to be administered, and when received. 2. The amount justly paid out by him on claims against the estate. 3. Whether *Kiger* made a settlement of the estate. 4. Whether *Kiger* paid to creditors, and others entitled, all the assets which came to his hands to be administered. 5. If said *Kiger* did make a settlement of said estate, whether he did not procure the same by fraud. 6. If such settle-

ment was procured by fraud, how much of the estate he failed to account for.

The jury found that *Kiger* had received 664 dollars of assets, that he had paid out 349 dollars, leaving in his hands 315 dollars; that they believed he did not make a settlement of the estate; that he did not pay out to creditors, and others entitled, all the assets which came to his hands; that if he did make a settlement, it was fraudulent; and that there remained in his hands a balance of 315 dollars.

At the *June* term, 1852, the cause was submitted upon the bill, answers, depositions, and verdict, and a decree was rendered in favor of the plaintiffs for 749 dollars and 75 cents, being the amount of assets unadministered, as found by the jury, with interest to the date of the decree, which was ordered to be paid into Court for the use of the plaintiffs, with the costs of suit; in default of which a special execution was awarded, to be levied of the real estate devised by said *Kiger* to his wife for life, with remainder to Mrs. *Falls* in fee.

This decree is resisted by the plaintiffs in error on various grounds.

It is objected that the issues tried by the jury were not properly framed, because they did not include all the material facts put in issue by the pleadings. Two facts thus put in issue, to-wit, fraud in the sale of the real estate of *McElrath* by *Kiger*, and the insolvency of said estate averred in the answer and denied by the replication, are not, in express terms, embraced in the issue. We think it was not necessary that they should be. The proceedings were had under the R. S. 1843. Section 62, p. 841, dispenses with feigned issues, and provides that whenever a question arises which, according to the usage, practice, and discretion of Courts of chancery, ought to be referred to a jury for trial, the Court may cause a comprehensive note and entry of the matter so to be tried to be made; and the verdict of the jury shall be taken for the information of the Court. A Court of chancery rarely has occasion to take the opinion of a jury upon all the questions involved in

the suit. If it were otherwise, in a complicated case, involving many facts and separate interests, how much soever the Court might wish the opinion of a jury upon a particular question, as of title, usury, or the like, it could never be taken. A Court of chancery may take the opinion of a jury as to any of the facts in controversy between the parties, whenever it thinks proper so to do. *Ray* v. *Doughty*, 4 Blackf. 115. The statute above quoted has not changed this rule.

Mrs. *Lapreese* died, during the pendency of the suit, being yet within twenty-one years of age. Her heirs were made parties in her stead, for whom a guardian *ad litem* was appointed, who pleaded the infancy of their mother, and that no guardian *ad litem* had been appointed for her. We think the plea was correctly overruled. The position of the plaintiffs in error is that the mother was never regularly made a party. Admitting that to be true, it does not destroy a right of action, if one existed, against her heirs.

The depositions of *Mary Goldizen* and *William Vermillion* were read at the hearing, which the defendants below moved to suppress, on the ground that they were incompetent from interest. Mrs. *Goldizen* was the widow of *McElrath*, by whom she had three children, one of whom died in infancy, after the death of the father. Her testimony tended to show maladministration by *Kiger*. Supposing her entitled as widow of *McElrath*, or as an heir at law to the deceased child, to a share of the estate in distribution, we do not think that fact made her interested in the event of this suit, nor in the record. One or more distributees might maintain an action for their distributive share. The recovery would not inure to the benefit of a distributee who did not join in the action. Hence Mrs. *Goldizen* was not interested in the suit. Nor could she, in a suit for her share, give the record in this case in evidence to show a *devastavit*. She was therefore competent.

The testimony of *Vermillion* was more important in itself, and the question of his competency rests upon a different principle. He testified that *McElrath* gave to one *Kibby* his note for 300 dollars, for a balance due on the

land, which he, *McElrath*, owned at his death, which note the witness held on account of an indebtedness of the payee to him, and that he had authority to collect it; that some time after the appointment of *Kiger* as administrator, he applied to him for payment, stating that he supposed he had had time enough to know how the estate stood, and whether the whole amount would be paid; that *Kiger* then promised to pay him the whole amount soon; that *Kiger* afterwards paid him 110 dollars on the note, refusing to pay more, which was all ever paid on it; that *Kiger* told him there was 400 dollars due the estate in *Virginia*, and that he had got it all. This testimony had so important a bearing upon the merits of the case, that if it was erroneously admitted, the decree can not be sustained.

It is a well-settled principle that a witness is not competent to create a fund by his testimony for his own benefit, or to increase one out of which he is entitled to a distributive share. *Peyton* v. *Hallett*, 1 Caines 363.—*Phœnix* v. *The Assignees of Ingraham*, 5 Johns. 412.—*Marland* v. *Jefferson*, 2 Pick. 240.—*Wood* v. *Braynard*, 9 *id.* 322.— *Cully* v. *Ross*, 7 Blackf. 312.—1 Greenl. Ev., sec. 392. One fact in issue in this cause, was, whether the estate of *McElrath* was solvent or insolvent. This was put in issue by the bill, answer, and replication. Another was whether *Kiger* had made a settlement of the estate. This question was submitted to the jury, who found that he had not. Until the administration was closed, *Vermillion* could enforce his demand as a creditor of the estate, and there having been no final settlement, he could enforce it against the heirs receiving assets, if there was no personal representative. The record in this case would be evidence for him that they had received assets, because it would be offered against the successful party. *Jenners* v. *Oldham*, 6 Blackf. 235.—*Hughes* v. *McClelland*, 4 Ind. R. 92. These cases show that *Vermillion* had an interest in the record of the recovery which his testimony tended to produce. Where the fund is ample, as in case of a solvent estate, a creditor is competent; *Martin* v. *Barlow*, 3 Ind. R. 367; but where the direct effect of the testimony is to create a

LAPREESE
v.
FALLS.

May Term,
1856.

fund which makes the estate solvent, the interest is manifest. We are therefore of the opinion that *Vermillion* was an incompetent witness, and that his testimony should have been excluded.

In answer to this objection, the defendants in error insist, that as the witness would now be competent, the error is cured; but the rule of this Court is the other way. *Silcox* v. *Cory*, 5 Ind. R. 370.—*Wright* v. *Gaff*, 6 Ind. R. 416.—*Doe* v. *The President and Trustees of Attica*, *ante*, 641. The dictum in *Mc Call* v. *Seevers*, 5 Ind. R. 187, was a mistake, as explained in *Unthank* v. *The Henry County Turnpike Company*, 6 Ind. R. 125.

The plea of the statute of limitations was properly disallowed, because the evidence showed one of the plaintiffs became of age shortly before the suit was commenced, and the other was an infant at that time.

Various other questions are raised upon the record before us, but the decision upon the exclusion of the testimony of *Vermillion*, renders a discussion of them unnecessary. We will remark, however, that, admitting the amount found by the jury to be correct, the decree would be erroneous. Two only of the heirs of *McElrath* were prosecuting this suit. It was proper for them to establish the whole amount of the *devastavit*, but when so established, they were not entitled to a decree for the whole, which the Probate Court gave them, but only for their distributive shares. The interest of Mrs. *Goldizen*, as widow of *McElrath* and heir of the deceased child, whatever it may have been (and as to that we decide nothing) should have been excluded from the amount of the recovery.

*Per Curiam.*—The decree is reversed with costs. Cause remanded to the *Parke* Common Pleas, for another trial.

*S. F. Maxwell* and *I. Blackford*, for the plaintiffs.

*A. L. Roache*, for the defendants.